Turn to Pulte Homes of New York v. Town of Carmel. Good afternoon. Michael Caruso for the appellant. The appellant respectfully reserves one minute for rebuttal time, Your Honors. Your Honors, this case is about when notice of an injury necessarily triggers accrual. And this case is very simple, Your Honors. There are two parts. First, the claims that were interposed were land use 1983 claims for civil rights deprivations. And these claims were interposed in the Southern District after state court litigation that transpired as a result of land use approvals at the administrative level resulted in significant fee exactions and recreation fees. $749,000 to be exact. A condition of approval, which we argue is a form of a carrot and a stick. In order to get your approval, you pay the fees. So in this case, there was state court litigation resulting in the annulment of those portions of the resolutions assessing those fees. Thereafter, the appellees refused to return the money that it was. Did you ask the state court to return the money? Your Honor, the state court decision was silent on that point. Did you ask the state court to return the money? Yes, Your Honor. Under a resettlement motion that was made to clarify and sharpen the order to make the ministerial directive to return it. Because logic dictates if you annul a condition requiring the payment of money, obviously logically that money should be returned to its rightful owner. Did you ask for that? We asked for that on resettlement. It was denied. And the appellate court, the second department, affirmed the denial. How can you possibly renew that claim here? Well, Your Honor, I will concede that the procedural mechanism was a little narrow for the purpose. Perhaps a direct appeal would have been more appropriate. But there was more risk with that procedure. How can a federal court possibly grant you the precise relief you didn't get from a state court? Well, Your Honor, I think that that mechanism wasn't appropriate for that relief. There possibly was a declaratory judgment action that might have lied to declare the balance of the resolutions legal, the ones that were not annulled, and thus directing the town to refund the money, which is our fifth cause of action before the Southern District. I can't wait to hear how many causes of action. Once a state court has turned you down in a civil case, what authority do you have that a federal court can give you that relief? Well, Your Honor, the authority lies in the fact that the procedural vehicle was inappropriate for the relief that I sought. That was resettlement. Inappropriate? Yes, Your Honor. You sought the wrong remedy? No, Your Honor, not an election of remedies problem necessarily, but the Second Department argued that the change we were requesting to the order was material and substantive, that being give us back our money, in effect. And my argument against a tidal wave of case law to the contrary was that this was not material, not substantive. But the appellate division was wrong. Correct, Your Honor. It could have gone to the Court of Appeals. Well, Your Honor, my client decided on another track. I understand he did. That's why you're here. My question is how can you possibly be here properly when you lost in the state court and didn't pursue your state court appellate remedy? And so far you haven't told me. Well, Your Honor, the appellant believed that there were mutually exclusive remedies that existed in the form of declaratory relief that didn't require further appeal to the Court of Appeals, which is why we went the route of a civil rights action, a timely civil rights action. Looking at what the state court said, what the appellate division said, I note that they found that the imposition of the recreation fee was inappropriate because, though, the planning board made no individualized consideration before imposing the fee. They didn't say as a matter of law that the planning division had no power to impose such a fee, just that there was a procedural problem. Is that a correct reading? That's a correct reading, Your Honor. So they didn't necessarily rule out the subsequent imposition of a fee or further actions by the planning division that might have legitimized retaining the fee. Isn't that correct? A sound point, Your Honor. And, in fact, in 2008, when the first of the three lots that the appellant owns, when one of the resolutions was challenged for the planning board's failure to first hold a Bayswater hearing for the recreational fee assessment fact-finding process, the appellate division sent it back and said, do your fact-finding. They never did, and they implemented the fee at the end of the process. It's a procedural problem as opposed to a finding that the plant of the town had no authority to impose any fee. I think that's accurate, Your Honor. Is that right? Yes. And am I right in understanding also that had you requested return of the fee, that the state court would have been authorized to do that in an Article 78 proceeding? Is that right? I believe so, Your Honor. We did finally, after that Article 78 was decided, and certainly there could be numerous, there could have been a lot more enumeration in the request for relief, surely. But I think that logically it follows from that decision to vacate a portion of that resolution assessing those fees that it necessarily follows that that money must be returned. I don't think that necessarily required that particularity. Well, another outcome could have been that this town should put it in escrow for a period of time, pending further proceedings that were more to the court's reading of the statutes about what kind of proceedings are needed before a fee can be imposed. Certainly, Your Honor. That would have been a wise course of action. I understand they are still being held in a segregated account nonetheless. Your Honor, the genesis of the civil rights claims doesn't lie necessarily in the state court proceeding whereby there was notice of a fee that was exacted at the end of site plan and then the appellant paid that money at the end of the process, thus creating a moment in time where accrual began and three years would result for accrual purposes. The broader arc of our complaint is that this is a pattern of conduct. Two separate litigations required this time and the second, Judge Grossman in Supreme Court Putnam County saying, Go back again. I am dismayed at the fact that you haven't done, again, your fact finding on these rec fees. There's a broader arc here, which is that the town, after receiving those monies and after resettlement being denied and those remedies being pursued or exhausted, if you will, the town created a Sophie's Choice. It said to the appellant, you may have your fees back, but the town will not recognize your approvals as being valid. Alternatively, you can submit yourself back to the site planning process and amend your plan once again, both of which were not desirable options in the least for the appellant. So that was the moment in time in 2014 that triggered the change of complexion in these claims from declaratory and merely procedural, if you will, to civil rights claims, where the conditioning of their return using really unlawful means took place. And subsequent to that, there were discussions held with the town's attorneys to release the money once again. There were interpretive differences discussed, and the town still refused in as late as 2016. One thing I'd like to point out for the court, in the lower court's ruling on discovery rule application as when this accrual started, one thing that's very important, I believe, is the court correctly cited the Singleton as well as the Covington cases. The Covington case coming out of this court obviously distinguished between accrual in false arrest and malicious prosecution cases, which is an important parallel here. Pulte, the appellant, did not vindicate its rights to its property until that Article 78 was decided, and it demanded its money back. But we've held earlier, haven't we, that if you're pursuing a remedy under Article 78, that doesn't toll the statute of limitations for 1983 claims, right? Correct, Your Honor. So the time is marching along. The first payment was made in 2008, 10 years ago now, and the second in 2013. So the 1983 statute is running. I guess part of what you're saying is that a pattern in practice didn't develop until the second time occurred. Precisely, Your Honor. But still, you have a statute of limitations problem, and you argue equitable tolling should apply. And I had trouble understanding exactly the basis for that. Well, Your Honor, our position is that we didn't cross the Rubicon, if you will, until the year 2014 when the town made it clear that there was no alternative. Either submit back to site plan, or you can surrender your site plan approval and have your money back. Those are the compelling circumstances that I wish the court to receive and spend time on in understanding that this complaint frames a pattern of conduct designed to keep this property out of the appellant's hands, and that was part of it. Didn't they, in their resolution in 2013, say you're going to have to pay the fee? In the preamble clauses to both resolutions, it's identified $3,500 per dwelling unit is the exaction. Later in the orders on pages, I can identify them for you in the joint appendix, Your Honor, A90, it identifies that failure to comply with any of the conditions may result in lack of approval or violation. It doesn't say shall. So Pulte did have a choice. When it paid the fee. Before you get to that, in the September resolution, didn't they say you have to pay the fee? Yes, Your Honor. That's a condition proceeding. In September? Yes, Your Honor. And that's outside the statute of limitations. Well, the payment came in October, October 18th, nearly a month after the resolution was passed on September 27th, which was a Friday. So in the process, I was preparing the Article 78 while the payment was being gathered and made on the 18th of October. Thank you. About a month later. Thank you, Mr. Caruso. Thank you very much. You reserve one minute. Thank you. Mr. Saviato. Good afternoon. May it please the Court. My name is Mauricio Saviato, and I'm counsel for the town of Carmel and the planning board of the town of Carmel. I think this panel has directly focused in on all the issues. None of them are new. None of them are novel. They've previously been decided by the Supreme Court. Well, one of them seems to be new, isn't it? Judge Newman raises what I take to be a question of possible abstention that was required of the state court. Judge Bracetti didn't abstain from effectively dealing with the last paragraph of your brief. Plaintiff is now asking this court to remand to the district court so that court may decide whether to overrule the state court as to the analysis and interpretation of its own order. There is simply no basis in law for such a request, and that may be. I think that's what was the subject of the conversation earlier, but did Judge Bracetti actually deal with that at any point? On the remand, on the re-argument? Well, in whatever opinion, was there more than one opinion? There may have been. On . . . Apparently the final opinion doesn't make any reference. Yeah. Your Honor, Judge Bracetti did not rule on that directly on the request for the remand. He had jurisdiction.  He had discretion to overrule a state court? No, no, no. I thought you were asking me if he could have kept supplemental jurisdiction over the state court claims. Yeah, but doesn't the state court claim involve overruling a state court decision? Well, I think that's the problem with the appellant's claims here. They're running afoul, basically, of Rooker-Feldman and asking this court and the federal courts to sit as a judiciary panel of state court decisions. So, no, I don't believe it should have been there to begin with. He decided on statute of limitations grounds because that issue was not briefed below, but that would be another basis upon which this claim, the dismissal, should be affirmed. It's just a separate and independent reason, I believe, Your Honor. I see. Okay. Well, nonetheless, could you just address for me what right the town would have to retain the fees that after the state court, Article 78 declarations, that they were improperly levied? I think Your Honor had articulated them. They're being held in escrow. They could be another application. The simple fact here is that the appellant- So you confirm that they are held in escrow? The state court didn't order that. Correct. I believe they are being held. It's not in the record, but that is both counsel and I's knowledge that it is being held, but it's certainly not in the record. So held in escrow pending what? Well, it's being held. I don't know what account it's being held in, Your Honor. It's not in the record, and I would only be speculating to go forward. I'm doing the best I can to answer your question, but the truth is it's not in the record. And other than knowledge that counsel- Does the town assert that it has the right to just retain the fee? It has the right to retain the fee. There's nothing stopping the appellant from reapplying and submitting a new site plan. They can certainly do that. The simple issue before the court is one of statute of limitations. The statute of limitations has expired. The plaintiff has already asked the state court for the return of the money. That request was denied. I think the only remedy that Pulte has is to submit another site plan. And what should Pulte have done? In retrospect, I believe in the state court orders they should have asked for the return of the money. They didn't ask for the return of the money in the underlying motion practice, and when they went to re-argue that, in essence, to resettle the order, the state court was very clear. They said, you didn't request this relief, so we're not going to give it to you. They had no reason to expect that the town would return the money if the state court said that it was improperly levied. I believe that is correct. There's no order. It's an odd result. Excuse me, Your Honor? It's an odd result. It may be, but if you don't ask, you don't receive, I believe. They didn't ask for it. They didn't get it. State court twice rejected that argument, and as the panel has recognized, this court, it's not for the federal courts to sit as a judicial panel of the state court decisions, and that's essentially what this action is about. If there are no further questions, I'll rest my brief at this point. All right, Mr. Caruso, you've got one minute. Thank you, Your Honor. I'll be very brief. Just to pull back around to the point of state remedies and overruling state court, I just want to focus on the nature of this as a continuing violation, rather than the emphasis on the discovery rule for accrual for a moment. The Sherman case out of this court in 2014, which is cited in our brief extensively, stands for the proposition that there are nondiscreet acts that can continue with each day, such as holding another person's money or another entity's property in this case. Notwithstanding that there may be remedies for resettlement or, to clarify that order, the order still annuls the fees and the town's right to hold them. Each day it continues to hold that property is a continuing violation, which is Pulte's position. If there's nothing further from the panel, we respectfully request that the decision be reversed in all respects or alternately remanded. Thank you, Your Honors. Thank you.